## MISSISSIPPI LIVE STOCK SANITARY BOARD *v.* BROADUS.

(Division A.   Feb. 14, 1938.)

(178 So. 787.   No. 33142.)

Rawls & Hathorn, of Columbia, and **W. D. Conn, Jr.**, Assistant Attorney-General, for appellant.

126

T. J. Wills, of Hattiesburg, for appellee.

128

Argued orally by **C. V. Hathorn,** for appellant, and by **T. J. Wills,** for appellee.

McGcwen, J., delivered the opinion of the court.

The appellant, Mississippi Live Stock Sanitary Board, hereafter called sanitary board, filed its bill in the chancery court of Stone county, seeking to compel the appellee, C. A. Broadus, to slaughter a team of eight oxen, or deliver them to it for the purpose of being slaughtered.

The bill alleged that the oxen had been tested for tuberculosis and had reacted to such test as being infected with that disease, and that such oxen, being reactors, were subject to be slaughtered under the rules and regulations of the United States Bureau of Animal Industry, and of the sanitary board of the state according to the statutory regulations pertaining thereto; that the appellee had concealed the oxen and declined to deliver them to the appellant for slaughter or to permit it to have them slaughtered, and prayed for a mandatory injunction that appellee be required to slaughter the cattle himself or deliver them to the appellant for slaughter.

The appellee, in his answer, denied the material allegations of the bill, admitted that he had the oxen in possession, but denied that he had concealed them or that they had shown requisite reaction to the Tuberculin test. The answer further stated that the sanitary board had declined to pay for the cattle, as provided by the controlling statutes of this state. On hearing the proof, the court below dismissed the bill, and an appeal is here prosecuted.

We deem it unnecessary to state the evidence in detail. The evidence for the appellant, the sanitary board, showed that a competent, experienced, and expert veterinarian had made the test in the accredited and approved manner, and had pronounced the cattle tubercular. The record discloses that the Tuberculin test was given, and seventy-two hours later swelling and inflammation developed at the point or site of the injection.

On the examination, the veterinarian saw the point of injection and pronounced the oxen tubercular. The appellee, Broadus, was also present during the inspection

and saw the point or place of injection on the cattle, but denied that there was any swelling or manifest reaction to the injection. There was conflict as to whether there was perceptible swelling when the injection was given. The veterinarian making the test tagged the animals with the Reactor Tags in their left ears, and branded the left jaws of the animals with the letter "T". Appellee and the veterinarian representing the appellant signed an appraisal of the condemned cattle at $100 each, but the sanitary board declined to pay anything.

The duties and powers of the Mississippi State Live Stock Sanitary Board are to be found in chapter 133, section 5414, Code 1930, by which section the sanitary board is vested with plenary power to deal with all contagious and infectious diseases of animals, including tuberculosis. The board is authorized to employ inspectors and range riders in order to carry in effect its rule and regulations. By section 5417 of this chapter, the sanitary board is authorized to employ qualified veterinarians to cooperate with the veterinarians of the United States Department of Agriculture, Bureau of Animal Industry, in testing cattle for tuberculosis in this state; and by section 5418, this board is directed to aid such counties as desire to undertake the control and eradication of tuberculosis among cattle.

By section 5419, Code 1930, the board of supervisors of any county in the state of Mississippi may, by an order entered on the minutes of the said board, express their intention to engage in the eradication of tuberculosis in live stock. Such order so entered on the minutes may be published for thirty days in a newspaper in the county having general circulation therein, and at the expiration of that time if 20 per cent. or more of the qualified electors do not file with the board a petition protesting against said order, the board shall enter an order upon its minutes to so engage in said eradication. Should 20 per cent. or more of the qualified electors protest against such action, then the board shall call an election, the re-

sult of which determines the action of the board of supervisors. Stone county, where it was sought to slaughter the cattle, had not by an order of its board of supervisors decided to engage in the eradication of tuberculosis. And under section 5420, Code 1930, the boards of supervisors of counties engaged in eradicating tuberculosis in live stock may indemnify such owners of infected cattle slaughtered.

Section 5416, Code 1930, is the statute which we think conclusively decides the issue here presented, and reads as follows:

"Owners of live stock infected with any contagious or infectious diseases, whose animals are destroyed by authority of the state live stock sanitary board, shall receive compensation from the state in accordance with the following provisions:

"Before authorizing the destruction of such diseased animals they shall be appraised (under oath) by three competent and disinterested appraisers; one to be selected by the live stock sanitary board and one by the claimant, and those two to select a third; the appraisal to be based upon the value of the animals at the time the disease was contracted; and, provided further, that not more than two-thirds of such appraised value shall be paid to the owner by the state, and not more than one-half of such appraised value shall be paid by the state when any portion of such appraised value is paid by the United States department of agriculture. Provided, that where the stock is assessed, not more than assessed value shall be paid.

"Upon receipt of a detailed account, duly signed by each member of the board of appraisers, in accordance with the provisions of statute, a voucher shall be issued, signed by the governor of the state and the chairman of the live stock sanitary board, authorizing the state auditor to issue a warrant for the amount stipulated out of any funds in the state treasury especially appropriated for this purpose."

By this statute it is provided that owners of live stock infected with contagious or infectious diseases, tuberculosis in the case at bar, shall receive compensation from the state in accordance with the following provision: "Before authorizing the destruction of such diseased animals they shall be appraised (under oath) by three competent and disinterested appraisers." This was not done by the appellant. And this statute further provides that upon receipt of a detailed account of the infected stock, signed by the proper persons, a voucher shall be issued by the Governor of the state and the chairman of the live stock sanitary board, authorizing the state auditor to issue a warrant for the amount stipulated out of any funds in the state treasury especially appropriated for this purpose.

It is quite manifest that this condition precedent was an essential prerequisite to the payment of any of the state's funds, and the agreement or appraisal as to the value of the cattle to be slaughtered entered into between the owner of the cattle and the representative of the appellant could not authorize the issuance of a voucher by the auditor. The purpose of the Legislature was to have a disinterested valuation; the attempted valuation or appraisal by the owner and the representative of the appellant was, in fact, an agreement between the parties most interested directly in the value of the animals. This the Legislature especially guarded against. The above-quoted section has been in force in this state since 1916; and there has never been an appropriation made by the Legislature for this purpose. That the Legislature has not made such an appropriation is due perhaps to the fact that no request has been made therefor. We think this appraisement was a condition precedent to be complied with by the appellant before it could authorize or require the destruction of the diseased animals. The Legislature never under the police power of the statute authorized the appellant to order the destruction of cattle infected with tuberculosis, and to take them without any

payment therefor; but, under this section, it saw fit to provide some compensation to the unfortunate owner for the destruction of his diseased cattle. The policy of the state, therefore, was to pay a proportionate part of the loss to the owner of the cattle. The regulations of the sanitary board did not make provision for the enforcement of this section of the law. In so far as the United States government regulations are concerned, no provisions are made at all for compensation to owners of steers found to be infected with tuberculosis. The plain provisions of the statute cannot be ignored; and without regard to the issue of fact raised between the parties here as to whether or not the cattle in question were infected with tuberculosis, a court of equity was without power to order the slaughter of these animals.

We reserve for decision, when necessity requires, the question of whether or not the owner must be actually paid before live stock reacting to the test for tuberculosis may be slaughtered.

Affirmed.